UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTONIO NOLAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cv-00611-SEB-TAB |
| HOLDRIETH, et al. | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Antonio Nolan, former inmate of the Bartholomew County Jail, alleges in this civil rights lawsuit that his cell was contaminated with black mold and that the defendants failed to rectify this problem. The defendants and Mr. Nolan seek summary judgment on Mr. Nolan's claims.[1] For the following reasons, the defendants' motion for summary judgment is **granted** and Mr. Nolan's motion for summary judgment is **denied**.

**I. Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the Court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond

---

[1] The Court notes that the defendants object to Mr. Nolan's filing of a motion for summary judgment as untimely, but, as discussed below, whether his motion is timely or not, Mr. Nolan is not entitled to summary judgment.

the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

## II. Facts

The parties have filed cross-motions for summary judgment, so the Court would typically take the motions "one at a time." *Am. Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). That's not necessary here, however, because even when all evidence is interpreted in Mr. Nolan's favor, the defendants are entitled to summary judgment.

### A. Parties

#### 1. Antonio Nolan

Mr. Nolan was an inmate at the Bartholomew County Jail from October 30, 2019, until June 22, 2020, when he was transported to the Indiana Department of Correction to serve his sentence. Dkt. 53-3 at 1-2, ¶ 2 (Martoccia Declaration). Mr. Nolan was being held on charges of domestic battery, and a petition to revoke parole had been filed. Dkt. 53-5. He eventually pleaded guilty to the charges against him, and the court dismissed the petition to revoke his probation. *Id.* Two days after his arrival, Mr. Nolan was assigned to cell 530, on the upper level of K block. Dkt. 53-3 at 1-2, ¶ 2. K block is two-tiered with four cells on each level *Id.* Each cell contains a shower and can house four inmates. *Id.*

#### 2. Sergeant Holdrieth

Haley Holdrieth is a sergeant at the Jail. Dkt. 53-1 ¶ 1 (Holdrieth Declaration). As a sergeant, she is not regularly in the Jail's cellblocks. *Id.* ¶ 3. Sergeant Holdreith does not respond

to grievances though she is sometimes asked for information or to investigate an issue by the person responding. *Id.* ¶ 7.

### 3. Rick Thompson

Rick Thompson is the maintenance supervisor at the Jail and overseas the five-person crew. Dkt. 53-2 at 1, ¶ 1 (Thompson Declaration). The maintenance crew is responsible for cleaning the sheriff's department building with the exception of inmate living areas. *Id.*

**B. Mr. Nolan's Claims of Mold**

Sometime in December 2019, Mr. Nolan noticed what he thought to be black mold on the ceiling, in the shower, and outside the shower of his cell. Dkt. 53-4 at 12, Nolan Dep. at 41:11-24, 17-18, Nolan Dep. at 46:24-47:5. Mr. Nolan testified that he let guards know about the mold whenever they came into the cellblock to do a count or with cleaning supplies. *Id.* at 15, Nolan Dep. at 44:3-12.

In January 2020, Jail Commander John Martoccia became aware that inmates in K block were complaining that there was mold in their cells. Dkt. 53-3 at 2, ¶ 5. He consulted with Mr. Thompson who told him that the only way to determine whether a substance is actually mold is to have the area professionally tested. *Id.* Therefore, Timberline Restoration Services was hired to perform the testing. *Id.*

Samples were collected for testing on February 14, 2020. Dkt. 53-2 at 3, ¶ 7. Mr. Thompson and another maintenance worker accompanied Timberline owner Dave Gross to K block, and Mr. Gross collected surface samples from an upper-level cell, a lower-level cell, and the dayroom. *Id.* Air samples were also collected from the dayroom and outside the building. *Id.*

Mr. Nolan submitted a grievance on February 17, 2020, alleging that he was being exposed to mold in his cell house. Dkt. 53-3 at 25; dkt. 53-4 at 52, Nolan Dep. at 94:16-21. Commander

Martoccia received a report dated February 18, 2020, with the result of the testing performed on February 14. Dkt. 53-3 at 7-24. Mr. Gross explained to Commander Martoccia that the findings showed no mold in K block. *Id.* at 3, ¶ 6. Based on the test results, Commander Martoccia concluded that the stains the inmates alleged were mold were another substance, likely hard water stains. *Id.* at 5, ¶ 11. After a few weeks, when he had not heard about these findings, Mr. Thompson asked Commander Martoccia about the test result, and Commander Martoccia explained that the result was negative. Dkt. 53-2 at 4, ¶ 8. Mr. Thompson closed the work order indicating the negative test result. *Id*. Captain Tyler Stillabower responded to Nolan's grievance on February 25, stating that the issue had been investigated, and there was no mold. Dkt. 53-3 at 3, ¶ 8 and 25.

After he submitted his grievance, Nolan continued to believe there was mold in his cell and that nothing was being done about it. Dkt. 53-4 at 14, Nolan Dep. at 43:2-4, and 75-78, 119:14-25-120:10, 22-24. In February and March 2020, he submitted requests for medical care and was seen by jail nurses for a lump on his neck and swollen lymph nodes, a sore throat, itching on his head after using someone else's shampoo, and dry skin on his arm. *Id.* at 26, Nolan Dep. at 62:5-25. The nurse told him that he was allergic to something but did not say his symptoms were related to mold exposure. *Id.* at 21, 27, Nolan Dep. at 50:17-18; 63:9-19. Nor has he been told that migraines he claims to have suffered from were the result of mold. *Id.* at 100, Nolan Dep. at 149:4-7. He was not seen for the nausea which he attributes to mold exposure. *Id.* at 102-03, Nolan Dep. at 151:20--152:1.

Mr. Nolan submitted another grievance dated June 13, 2020, stating that there was fecal matter and toilet paper in the dayroom and black surface mold on the ceiling in cell 530 and around and outside the shower in his cell. Dkt. 53-3 at 26. The response indicated that a work order had been placed for the items on the wall in the dayroom and shower curtain, and that testing showed

4

no mold spores. *Id.* Mr. Nolan states that his shower curtain was not replaced before he left the Jail. Dkt. 57 ¶ 3.

### III. Discussion

**A. Fourteenth Amendment Standard**

Analysis of Mr. Nolan's conditions of confinement claim depends on whether he was a pretrial detainee or convicted prisoner at the time of his allegations. This is because the Eighth Amendment applies to claims by convicted prisoners while the Fourteenth Amendment applies to claims by pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 402-03 (2015); *Hardeman v. Curran*, 933 F.3d 816, 822–23 (7th Cir. 2019). At the time he alleges he was exposed to mold Mr. Nolan was being held on charges of domestic battery and a petition to revoke parole had been filed. Dkt. 53-5. Near the end of his term in the Jail, he pleaded guilty to the charges against him, and the court dismissed the petition to revoke his probation. *Id.*

Although the Seventh Circuit has not yet determined whether the Eighth Amendment or Fourteenth Amendment standard applies to a plaintiff detained in jail as the result of a probation violation, the defendants argue that even under the Fourteenth Amendment standard, he has failed to show that his rights were violated. A detainee can state such a claim by alleging that: (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly" as to the conditions of the detainee's confinement; and (2) the defendant's conduct was objectively unreasonable. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018).

The defendants agree that if Mr. Nolan had been subjected to prolonged exposure to mold, he may be able to show that he was denied constitutional conditions of confinement. *See Bd. v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005). But they argue that Mr. Nolan was not exposed to mold and that their responses to his complaints were objectively reasonable.

5

### B. Sergeant Holdreith

The parties dispute whether Mr. Nolan complained to Sergeant Holdreith that there was mold in his cell. Sergeant Holdreith asserts that, sometime before the block was tested for mold, she accompanied a maintenance employee to K block to apply bleach to the shower in one of the cells and to wash the shower curtain. Dkt. 53-1 ¶ 6. But she does not recall Mr. Nolan asking to have his cell checked at that time. *Id.* Mr. Nolan asserts that he spoke to her about the mold on February 14, 2020. Dkt. 58 at 1.

Even assuming that, as Mr. Nolan contends, he complained to Sergeant Holdreith about mold on February 14, no reasonable jury could conclude that she violated his rights. First, the report from Timberline Restoration indicates that no mold was found in K block. Dkt. 53-3 at 3, ¶ 8. While Mr. Nolan challenges this conclusion, arguing among other things, that his particular cell was not tested, he is not trained to test for mold, dkt. 53-4 at 39, Nolan Dep. at 79:11-15, and has presented no sufficient evidence to support an inference that this conclusion was incorrect. It is therefore undisputed that there was no mold, and therefore, that he was not subjected to unconstitutional conditions of confinement.

Next, even if there was mold, there is no evidence that Sergeant Holdreith's response to Mr. Nolan's complaints was objectively unreasonable. Mr. Nolan contends that he complained to her on February 14, 2020, regarding the mold, and she told him to file a grievance. Dkt. 53-4 at 61, Nolan Dep. at 103:5-9. It is undisputed that Mr. Nolan filed a grievance on February 17 and received a response a week later that no mold had been found in the cell block. Dkt. 53-3 at 25. In these circumstances, no reasonable jury could find that Sergeant Holdreith acted in an objectively unreasonable manner in taking no further action on Mr. Nolan's assertion that there was mold in his cell.

### C. Mr. Thompson

The parties also dispute whether Mr. Nolan complained of mold to Mr. Thompson. Mr. Nolan asserts that he raised his mold concerns with Mr. Thompson when he raised them with Sergeant Holdreith, dkt. 58 at 1, but Mr. Thompson testifies that he does not recall any interaction with Mr. Nolan, dkt. 53-2 at 2, ¶ 3. But even if Mr. Nolan did complain about mold to Mr. Thompson, it is undisputed that, when he became aware of concerns about mold, Mr. Thompson recommended testing, that testing was conducted, and the testing company determined that there was none. Dkt. 53-3 at 2-3, ¶¶ 5,8. Again, in these circumstances, Mr. Thompson's failure to further address Mr. Nolan's complaint of mold was not objectively unreasonable.

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [53], is **granted** and Mr. Nolan's motion for summary judgment, dkt. [56], is **denied**. Judgment consistent with this Order and the Order of February 16, 2021, dkt. [44], shall now issue.

Date: 3/11/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ANTONIO NOLAN
728 Glendale
Columbus, IN 47201

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com